UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-1715 JGB (SHKx)** | Date | November 15, 2023 |
|---|---|---|---|
| Title | *Richard K. Magee v. General Motors LLC, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING AS MOOT Defendant's Motion to Dismiss (Dkt. No. 11); (2) DENYING Plaintiff's Motion to Remand (Dkt. No. 15); and (3) VACATING the November 20, 2023 Hearing (IN CHAMBERS)

Before the Court is a motion to dismiss filed by Defendant General Motors, LLC ("Defendant" or "GM") ("MTD," Dkt. No. 11) and a motion to remand filed by Plaintiff Richard K. Magee ("Plaintiff" or "Magee") ("MTR," Dkt. No. 15). The Court determines these matters are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the motions, the Court **DENIES AS MOOT** the MTD, **DENIES** the MTR, and **VACATES** the November 20, 2023 hearing.

## I. BACKGROUND

On July 20, 2023, Plaintiff Richard K. Magee sued GM and Does 1–10 in the Superior Court of the State of California, County of Riverside, alleging violations of the California Song-Beverly Act, fraud, and violations of California Business & Professions Code section 17200. (See "Complaint," Dkt. No. 1-1.) On August 23, 2023, Defendant removed the action on the basis of diversity jurisdiction. ("Notice of Removal," Dkt. No. 1.)

On September 13, 2023, Defendant filed a motion to dismiss Plaintiff's fourth and fifth causes of action for fraud (misrepresentation and concealment) and violations of the so-called "fraudulent prong" of California Business & Professions Code section 17200 (collectively, Plaintiff's "fraud claims"). (See MTD.) In support of the motion, Defendant filed a declaration of Peter A. Strotz. ("Strotz Decl. ISO MTD," Dkt. No. 11-1.) Plaintiff filed his opposition on

September 21, 2023.  ("Opp. to MTD," Dkt. No. 16.)  Defendant replied on October 2, 2023. ("Reply to MTD," Dkt. No. 19.)

On September 20, 2023, Plaintiff filed a motion to remand.  (MTR.)  Defendant filed an opposition on September 25, 2023.  ("Opp. to MTR," Dkt. No. 17.)  In support of the opposition, Defendant filed the following:

- Declaration of Peter A. Strotz ("Strotz Decl. ISO Opp. to MTR," Dkt. No. 17-1);
- Exhibit A to the Declaration of Peter A. Strotz, which is the retail installment sales contract for the vehicle at issue in the Complaint ("Contract," Dkt. No. 17-2);
- Declaration of Timothy M. Kuhn ("Kuhn Decl. ISO Opp. to MTR" or "Kuhn Decl.," Dkt. No. 17-3); and,
- Joint Rule 26(f) Report filed in a separate case brought by Plaintiff's counsel, entitled Joanna Kuehl v. General Motors, LLC, et al., Case No. 2:23-cv-06980 ("Kuehl Rule 26(f) Report," Dkt. No. 17-4).

Plaintiff replied on October 2, 2023.  ("Reply to MTR," Dkt. No. 18.)

Plaintiff also submitted evidentiary objections in response to the evidence submitted with Defendant's opposition.  ("Evidentiary Objections," Dkt. No. 20.)  On September 25, 2023, Defendant filed an opposition to Plaintiff's evidentiary objections ("Opp. to Evidentiary Objections," Dkt. No. 18), along with the following three exhibits:

- GM's Entity Details from the Delaware Secretary of State's website, obtained on October 12, 2023 ("GM Entity Details," Dkt. No. 21-1);
- General Motors Holdings LLC's Entity Details from the Delaware Secretary of State's website, obtained on October 12, 2023 ("General Motors Holdings LLC's Entity Details," Dkt. No. 21-2); and,
- GM's Statement of Information from the California Secretary of State's website, obtained on October 12, 2023 ("GM Statement of Information," Dkt. No. 21-3).

## II.   FACTS

**A.  Allegations in the Complaint**

On or about September 17, 2017, Plaintiff acquired the "Subject Vehicle"—a new 2017 Chevrolet Bolt—from an authorized dealer and agent of General Motors in California. (Complaint ¶¶ 7–9.)  The Subject Vehicle was sold to Plaintiff with "express warranties that [it] would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent [it] had defects, [Defendant] would repair the defects."  (Id. ¶ 10.)  Defendant also impliedly warranted that the Subject Vehicle "would be of the same quality as similar vehicles sold in the trade" and "fit for the ordinary purposes for which similar vehicles are used."  (Id. ¶ 11.)

Plaintiff performed all conditions owed by him under the purchase contract.  (Id. ¶ 12.) "On each occasion on which the [Subject Vehicle] exhibited defects, nonconformities, misadjustments, or malfunctions, as hereinabove described, [Plaintiff] notified Defendant, through or one of Defendant's other authorized service and repair facilities, within a reasonable time after [his] discovery thereof.  On each occasion of notification, [Plaintiff] attempted to invoke the applicable warranties, demanding that the authorized repair facilities repair such nonconformities pursuant to the warranties." (Id. ¶ 13.)  Defendant represented to Plaintiff that "they could and would make the [Subject Vehicle] conform to applicable warranties, and/or that they had successfully repaired the [Subject Vehicle]," but they failed to do so, either because they were "unable or unwilling."  (Id. ¶¶ 14–15.)

"In 2021, [GM] issued a recall notice for the [Subject Vehicle], stating that its batteries may ignite when nearing a full charge.  GM warned Plaintiff that the vehicle's charge should not exceed 90%, the battery 23 mileage should not fall below seventy (70) miles remaining, and the vehicle should not be 24 parked indoors overnight."  (Id. ¶ 18.)  "This battery defect presents a significant safety risk for Plaintiff because of the inherent risk that the batteries may ignite when nearing full charge.  Due to the battery defect and risk of fire, Plaintiff is forced to make unforeseen accommodations and take precautions that interfere with their normal and expected use of the vehicle."  (Id. ¶ 19.)

"[GM] marketed the subject vehicle in a false and misleading manner by advertising it as safe and functional.  The vehicle is neither safe nor functional for normal use due to the presence of defective and dangerous lithium-ion battery modules."  (Id. ¶ 17.)  "[GM] undertook a marketing strategy that advertises a competitive mileage capacity (at or about 259 miles electric range on a full charge[)] to convey that consumers, such as Plaintiff, are receiving and [sic] electric vehicle that is able to maintain battery life for long distances.  Such representations constitute an express warranty regarding the vehicle's capabilities. Based on Defendant's advertising, Plaintiff believed that [he was] purchasing a vehicle that was functional and safe. Plaintiff could not have reasonably understood or expected these representations to be untrue at the time of acquisition. Plaintiff expected the vehicle to meet the stated long-range mileage capacity and battery usage."  (Id. ¶¶ 14–15.)  "Plaintiff expected to use the [Subject Vehicle] without the fear of the vehicle igniting and causing serious bodily harm or death."  (Id. ¶ 29.)

"Plaintiff's use and enjoyment of the [Subject Vehicle] has been severely limited.  Instead of utilizing the vehicle, or even saving money due to the vehicle being electric, Plaintiff is forced to use other vehicles instead, spend more money on gas charges, and substantially limit the use of the vehicle.  Due to the fact that Plaintiff cannot charge the vehicle overnight and instead must resort to sporadic charging times, the charge is severely limited and thus, his ability to use the vehicle is severely limited.  Plaintiff has suffered constant anxiety and loss of sleep as a direct result of the risk the vehicle may spontaneously ignite.  Plaintiff would not have bought the vehicle if they had known it was neither safe nor functioned as advertised, based on Defendant's standards for normal use.  Plaintiff would like to use the vehicle as intended without limitation."  (Id. ¶¶ 30–34.)

With respect to his fourth cause of action for fraud – affirmative misrepresentation, Plaintiff specifically alleges the following: "[GM] willfully, falsely, and knowingly marketed the [Subject Vehicle] as having the range capability to reach 259-miles on a full charge. Through this deceptive marketing, Defendant communicated to Plaintiff that the vehicle was, among other things, environmentally friendly and capable of long-range use. This was a material fact, as mileage range is essential to the reasonable consumer's decision-making process. Defendant's representations were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the range capability of the vehicle." (Id. ¶¶ 69–70.) GM "knew the representations were false and intended Plaintiff to rely on them," and "Plaintiff decided to buy the vehicle based in part on the false and misleading misrepresentations" previously described. (Id. ¶¶ 71–72.) "Defendant's mileage range advertisements were part of an extensive advertising campaign, and Plaintiff was exposed to the advertisements." (Id. ¶ 72.)

Plaintiff also alleges fraud under a theory of fraudulent concealment. In support of that theory, Plaintiff specifically alleges the following: "Defendant marketed the vehicle as having the range capability to reach 259-miles on a full charge, which not only communicated that the vehicle was environmentally friendly, but also that it was capable of long-range use" and "[t]he mileage range was also the centerpiece of Defendant's marketing efforts and featured prominently in virtually every advertisement and consumer communication" as well as "dealership training materials leading to representations at the point of sale, vehicle brochures, the manufacturer websites, print advertisements, television advertisements, and other avenues." (Id. ¶ 74.) "Defendant pervasively and consistently represented that the vehicle had the best-in-class fuel economy and touted its specific mileage range on a single charge, as well as its supposedly superior battery, that was presumably safe. Defendant concealed and suppressed the fact that the vehicle could not achieve its expected range and safety due to the overheating battery. Instead, Plaintiff would only be able to charge the vehicle to 90% and use the vehicle only if the use-did not exceed 70 miles remaining. This was a material fact about which the Defendant had knowledge, and which it concealed from Plaintiff to mislead them." (Id. ¶ 75.)

"Defendant had a duty to disclose that the battery in the vehicle is unsafe at the point of purchase because (1) Defendant had exclusive knowledge of the material, suppressed facts; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the mileage range, battery safety, and performance of the vehicle that were misleading without disclosure of the fact that the vehicle contained unsafe batteries that caused the vehicle to overheat and pose a risk of fire. Defendant intended for Plaintiff to rely on these representations, as evidenced by Defendant's advertising which stresses the '259-mi' range of each vehicle. Plaintiff decided to buy the vehicle based in substantial part on the representations communicated through the Defendant's marketing material." (Id. ¶¶ 78–80.)

With regard to Plaintiff's fifth cause of action for violation of California Business & Professions Code section 17200, he specifically alleges the following with respect to the "fraudulent" prong of that claim: "Defendant advertised the vehicle as having a leading electric vehicle mileage capacity of 259 miles per full charge. However, the vehicle is not capable of

meeting this mileage expectation, due to the battery condition. This misrepresentation is proven by Defendant's recall notice(s) sent out to Plaintiff warning them to not to exceed 90% of the mileage capability, approximately 233 miles to the charge. Moreover, Plaintiff was informed not to allow the vehicles' charge to fall below 70 miles. Lastly, Plaintiff was warned not to park the vehicle indoors overnight due to concerns that the battery may catch on fire. These restrictions significantly infringe upon Plaintiff's use of the vehicle and present serious safety concerns. Had Plaintiff known of these safety issues and use limitations a month prior, he would not have purchased the vehicle." (Id. ¶¶ 84–85.)

"Defendant's conduct of using a defective battery at the point of sale without notifying prospective consumers that the battery is unsafe, is likely to deceive members of the public" as is "Defendant's conduct of advertising a battery range of 259 miles" and "Defendant's use of a defective battery." (Id. ¶¶ 102–104.) "Defendant knew or should have known of their fraudulent conduct" and "had reasonable available alternatives to further its business interests," such as using "a battery appropriate for the quality and safety of the vehicle." (Id. ¶¶ 105, 107.) Plaintiff further alleges that Defendant's wrongful conduct is a pattern and is repeated thousands of times every day. (Id. ¶ 80.)

**B. Jurisdictional Allegations**

Plaintiff alleges that he is a resident of the City of Temecula, County of Riverside, and the State of California. (See Complaint ¶ 1.) The vehicle purchase contract lists a California address for Plaintiff. (See Contract.) Timothy M. Kuhn, Counsel at General Motors, LLC, avers in his declaration that "GM is a Delaware limited liability company that has its principal place of business in the State of Michigan." (Kuhn Decl. ¶¶ 1, 4.) Kuhn further avers that "GM is 100% owned by General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC is 100% owned by General Motors Company." (Id. ¶ 5.) Kuhn also avers that "General Motors Company is a Delaware corporation that has its principal place of business in the state of Michigan." (Id. ¶ 6.) The exhibits Defendant submitted with its opposition to Plaintiff's evidentiary objections corroborate Mr. Kuhn's testimony concerning GM's corporate citizenship.[1] (See GM Entity Details; General Motors Holdings LLC's Entity Details; GM Statement of Information.)

---

[1] Defendant requests the Court take judicial notice of these documents. The Court "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts regularly take judicial notice of certificates of incorporation. See, e.g., Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1265 (C.D. Cal. 2010) (taking judicial notice of the Delaware Secretary of State certification of incorporation for a corporation). Accordingly, the Court **GRANTS** the request for judicial notice.

Plaintiff's Complaint seeks damages for the purchase price of the Subject Vehicle, as well as a civil penalty of "two times" that amount, plus attorneys' fees and punitive damages on the fraud-based claims. (See Complaint ¶¶ 37–38, 43, 46.) GM alleges in its Notice of Removal that the average manufacturer's suggested retail price of a 2017 Bolt was $38,875. (See Dkt. No. 1-3 ¶ 4.) The vehicle purchase contract indicates that Plaintiff purchased the Subject Vehicle for $42,400, with the total cost inclusive of finance charges totaling $48,271.31. (See Contract.)

### III.  LEGAL STANDARD

**A. Rule 12(b)(1)[2]**

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447.

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); see also Abrego v. Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006); Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]"). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citations omitted).

A defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. Complete diversity of citizenship is required, i.e., "the citizenship of each plaintiff [must be] different from that of each defendant." Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009).

"[T]he Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence." Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class."

---

[2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016). "Defendant has no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Where "a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Id.

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis, 828 F.2d at 1388.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to

relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Rule 9(b)

Rule 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake. Fed. R. Civ. P. 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. To state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citation and quotation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

### C. Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Despite this liberal standard, leave to amend may be denied if amendment would be futile to rectify the deficiencies in a pleading. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

### IV.   DISCUSSION

Because subject matter jurisdiction is a threshold issue, the Court first addresses the motion to remand before turning to the motion to dismiss. See Bibiano v. Lynch, 834 F.3d 966, 970 n.4 (9th Cir. 2016) ("Courts should generally decide, as a threshold matter, whether they have subject matter jurisdiction before moving on to other, non-merits threshold issues.").

### A. Motion to Remand

Plaintiff moves to remand this action "because Defendant has the burden of proving, by a preponderance of the evidence, that the allegations contained in its Notice of Removal are true, and it cannot do so in this case." (See MTR at 1.) Plaintiff does not identify any specific issues with, or deficiencies in, Defendant's Notice of Removal, but instead asserts more generally that Defendant cannot meet its evidentiary burden in any respect. The Court disagrees with Plaintiff

and finds that Defendant has established diversity jurisdiction under 28 U.S.C. § 1332(a) for the reasons set out below.

1. **Procedural Requirements**

GM has complied with all procedural requirements imposed by 28 U.S.C. § 1446, which requires that (1) a notice of removal containing the required allegations supporting the propriety of removal be filed within the required time, (2) all relevant parties join in the removal, and (3) Defendant attach all relevant pleadings from the Superior Court to the notice of removal. First, GM was served with process on July 24, 2023, and timely filed its notice of removal on August 23, 2023, within 30 days of service in accordance with 28 U.S.C. § 1446. (See Notice of Removal.) Second, GM is the only named defendant, and thus the only defendant required to consent to removal. See Tucker v. Royal Adhesives & Sealants, LLC, 2023 WL 2666056, at *6 (C.D. Cal. Mar. 28, 2023) ("Per its terms, fictitiously named defendants are not to be considered when assessing the propriety of removal jurisdiction based on diversity."). Third, GM's notice of removal attaches all pleadings, process, and orders served on it before removal. (See Notice of Removal.)

2. **Complete Diversity of Citizenship**

To establish diversity jurisdiction under 28 U.S.C. § 1332(a), the party invoking the court's jurisdiction must show by a preponderance of the evidence that diversity is complete, meaning that each defendant is a citizen of a different state than each plaintiff. See Digimarc, 549 F.3d at 1234; Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). GM has satisfied this burden.

First, Plaintiff himself alleges in his Complaint that he resides in the State of California. (Complaint ¶ 1.) The vehicle purchase contract signed by Plaintiff also lists a California address. (Contract.) Plaintiff does not dispute that he is a citizen of California, nor that he is a citizen of the United States; instead, Plaintiff merely argues that Defendant has not done enough to "prove" these facts. (See generally MTR; Reply to MTR at 5–6.) Plaintiff misstates Defendant's burden. Defendant need only show by a preponderance of the evidence that Plaintiff is domiciled in California, and Defendant has done so. See Bradley Min. Co. v. Boice, 194 F.2d 80, 84 (9th Cir. 1951) (holding that plaintiff's state of residence is presumptively his state of citizenship); Salazar v. Ford Motor Co., 2022 WL 16855563, at *4 (C.D. Cal. Nov. 10, 2022) ("Courts in this district have held a party may rely on an address listed in a purchase agreement to meet its burden of establishing an individual's citizenship."). Plaintiff is thus a citizen of the state of California.

Second, GM (and each of its owner/member organizations) is a Delaware entity with its principal place of business in Michigan, meaning GM is a citizen of both of those states with respect to the diversity jurisdiction inquiry. Limited Liability Companies like GM are citizens of every state in which its "owners/members" are citizens, see Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006), and a corporation is a citizen of any state in

which it is incorporated and any state in which it maintains its principal place of business, see 28 U.S.C. § 1332(c)(1). In his declaration submitted with Defendant's Opposition to the Motion to Remand, Timothy M. Kuhn, Counsel at General Motors, LLC, avers that "GM is a Delaware limited liability company that has its principal place of business in the State of Michigan" and is "100% owned by General Motors Holdings LLC," which is itself a "Delaware limited liability company with its principal place of business in Michigan" and owned by General Motors Company—a "Delaware corporation that has its principal place of business in the state of Michigan." (Kuhn Decl. ¶¶ 1, 4–6.) GM is thus a citizen of Delaware and Michigan, and completely diverse from Plaintiff, who is a citizen of California.

In response, Plaintiff argues that Defendant "failed to submit admissible evidence proving the citizenship of any of the parties" on either the date the lawsuit was filed or the date the action was removed to federal court and has thus failed to establish complete diversity. (Reply to MTR at 3.) Not so. Defendant's allegations are not time-specific, nor are the facts averred to by Tim M. Kuhn in his declaration.

Plaintiff's evidentiary objections to Mr. Kuhn's declaration also fail. (Evidentiary Objections.) Plaintiff argues that Mr. Kuhn's testimony is conclusory and lacks foundation (see Evidentiary Objections at 2–4), but Mr. Kuhn has personal knowledge of the facts in his declaration given his role as Counsel at GM, which makes him competent to testify as to GM's corporate structure. And in any event, GM's corporate citizenship is not reasonably subject to dispute, as made clear by the California and Delaware Secretary of State records submitted by Defendant. (See GM Entity Details; General Motors Holdings LLC's Entity Details; GM Statement of Information.) Indeed, Plaintiff does not substantively dispute whatsoever Defendant's diversity allegations. The Court therefore concludes that Defendant has demonstrated complete diversity between the parties by a preponderance of the evidence.

### 3. Amount in Controversy

To satisfy the amount in controversy requirement, Defendant must demonstrate that by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interests and costs. See 28 U.S.C. § 1332(a); Ives v. Allstate Ins. Co., 504 F. Supp. 3d 1095, 1098 (C.D. Cal. 2020). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). Importantly, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). To determine the amount in controversy, the Court can consider "all relief claimed at the time of removal to which the plaintiff would be entitled if []he prevails." Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 418 (9th Cir. 2018). As such, the amount in controversy "may include damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." Id. at 416 (internal quotations and citation omitted).

Defendant contends that the allegations in Plaintiff's Complaint make clear that Plaintiff seeks relief in excess of $75,000. (Opp. to MTR at 3.) The Court agrees. Plaintiff's Complaint seeks damages for the purchase price of the Subject Vehicle or restitution of the amount actually paid (or payable) under the vehicle purchase contract. (Complaint ¶ 37.) In its Notice of Removal, GM alleges that the average manufacturer's suggested retail price for a 2017 Chevrolet Bolt was $38,875—a number averred to by Timothy M. Kuhn, Counsel for GM. (See Dkt. No. 1-3 ¶ 4.) The vehicle purchase contract indicates that Plaintiff purchased the vehicle for $42,400, with the total cost inclusive of financing charges totaling $48,271.31.[3] (See Contract.) Courts have found the total cash price listed on a similar vehicle purchase contract to constitute a reasonable estimate of the actual price paid for the vehicle. See Salazar, 2022 WL 16855563, at *3 (citing Luna v. FCA US, LLC, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021); Messih v. Mercedes-Benz USA, LLC, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021)).

Plaintiff's Complaint also claims that he is entitled to a civil penalty of two times his actual damages, and twice the cash price of the Subject Vehicle totals an additional $84,800. (Complaint ¶¶ 43–44.) This Court includes civil penalties under the Song-Beverly act among the amount in controversy calculation, as have others. See, e.g., Salazar, 2022 WL 16855563, at *3; Rachman v. FCA US LLC, 2021 WL 2285102, at *3. The purchase price of the Subject Vehicle plus the maximum available civil penalties available under the Song-Beverly Act thus total over $133,071.31 and are together sufficient to establish the amount in controversy.

Defendant provides two additional bases for its contention that the amount in controversy is sufficient: Plaintiff's demands for attorneys' fees under the Song-Beverly Act and for punitive damages. (Opp. to MTR at 5–6.) The Court need not, and does not, substantively analyze these contentions because it finds that Plaintiff's alleged actual damages and civil penalties satisfy the requirement, but nonetheless notes that Defendant's arguments regarding these fees and damages are persuasive. Moreover, Plaintiff does not offer a single counterargument concerning the amount in controversy in its Reply.

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand.

//

---

[3] In its Opposition, GM acknowledges that these amounts do not include a mileage offset, but argues that an offset is unnecessary, as Plaintiff's Complaint does not reference a mileage offset, and, given the other alleged damages discussed below, applying a mileage offset would not reduce the total amount in controversy below the jurisdictional threshold. (See Opp. to MTR at 4 n.2.) The Court agrees that courts in this district have taken a similar approach in not applying a mileage offset, and in any event, deciding otherwise would not affect the Court's conclusion that Defendant has demonstrated that the amount in controversy is met here. See Selinger v. Ford Motor Co., 2023 WL 2813510, at *10 (C.D. Cal. Apr. 5, 2023) ("[A] removing defendant is not obligated to present evidence regarding the mileage offset to establish the amount-in-controversy requirement for claims arising under the Song Beverly Act.").

### B. Motion to Dismiss

Defendant's grounds for moving to dismiss Plaintiff's fraud claims are threefold: (1) Plaintiff failed to plead fraud with particularity as required by Rule 9(b), (2) Plaintiff failed to plausibly allege GM's knowledge of the alleged defect at (or before) the time the Subject Vehicle was purchased, and (3) Plaintiff's claims for fraudulent concealment fail as a matter of law because they are barred by the economic loss rule and Plaintiff did not, and cannot, allege a transactional relationship with GM giving rise to a duty to disclose. (See MTD.) In his opposition, Plaintiff does not argue that his fraud claims were adequately pleaded, and instead requests the Court grant him leave to amend. (See Opp. to MTD.) And although Plaintiff appears to dispute Defendant's general point concerning the non-existence of a transactional relationship between Plaintiff and GM, Plaintiff does not contend that the Complaint properly alleges such a relationship. (See id. at 3–4.) Defendant does not oppose Plaintiff's request to amend the complaint but asserts that because Plaintiff "will *presumably* amend the Complaint to match the allegations in the Opposition," his fraud claims will fail as a matter of law even after amendment. (Reply to MTD at 2 (emphasis added).) In light of Plaintiff's intent to amend the Complaint and Defendant's consent to same, the Court does not reach the substance of the motion.

Given Plaintiff's request, Defendant's non-opposition, and the "extreme liberality" with which leave to amend should be granted under Rule 15(a), the Court **GRANTS** Plaintiff leave to file an amended complaint and **DENIES AS MOOT** the Motion to Dismiss. See Fed. R. Civ. P. 15(a); Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).

### V.  CONCLUSION

For the reasons above, the Court **DENIES** the Motion to Remand and **DENIES AS MOOT** the Motion to Dismiss. Plaintiff must file an amended complaint, if any, by **Monday, November 27, 2023.** The November 20, 2023 hearing is **VACATED.**

**IT IS SO ORDERED.**